# 18 MAG 1150

ORIGINAL

Approved: _____
ALISON MOE / THANE REHN
Assistant United States Attorneys

U.S. DISTRICT COURT
FILED

FEB 13 2018

DS
S.D. OF N.Y.

Before:     HONORABLE DEBRA FREEMAN
            United States Magistrate Judge
            Southern District of New York

----------------------------------x
                                   :
UNITED STATES OF AMERICA           :     SEALED COMPLAINT
                                   :
          - v. -                   :     Violations of
                                   :     21 U.S.C. § 846 and
                                   :     18 U.S.C. § 924(c)
                                   :
XAVIER WILLIAMS and                :
TYRONE WOOLASTON,                  :
                                   :     COUNTY OF OFFENSE:
          Defendants.              :     NEW YORK
                                   :
----------------------------------x

STATE OF NEW YORK          )  ss:
SOUTHERN DISTRICT OF NEW YORK  )

          CHRISTOPHER KALEY, being duly sworn, deposes and says
that he is a Special Agent with Homeland Security Investigations
("HSI"), and charges as follows:

## COUNT ONE

### (Narcotics Conspiracy)

          1.   From in or about May 2015, up to and including in
or about February 2018, in the Southern District of New York and
elsewhere, XAVIER WILLIAMS and TYRONE WOOLASTON, the defendants,
and others known and unknown, intentionally and knowingly did
combine, conspire, confederate, and agree together and with each
other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy
that XAVIER WILLIAMS and TYRONE WOOLASTON, the defendants, and
others known and unknown, would and did distribute and possess
with intent to distribute a controlled substance, in violation
of Title 21, United States Code, Section 841(a)(1).

          3.   The controlled substances that XAVIER WILLIAMS
and TYRONE WOOLASTON, the defendants, conspired to distribute

1

and possess with  intent to distribute were five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## Count Two

### (Use of Firearms in Furtherance of Count One)

4.    In or about February 2018, in the Southern District of New York and elsewhere, XAVIER WILLIAMS and TYRONE WOOLASTON, the defendants, during and in relation to a drug trafficking crime for which WILLIAMS AND WOOLASTON may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count One of this Complaint, knowingly did use and carry firearms, and, in furtherance of such crime, did possess firearms.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge of the foregoing charge is, in part, as follows:

5.    I am a Special Agent with HSI and I have been personally involved in the investigation of this matter.   This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.   Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.   Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Since in or about May 2015, HSI has been investigating a Drug Trafficking Organization ("DTO") that is believed to be operating in and around Newark International Airport (the "Airport") and that organizes the smuggling of luggage containing cocaine shipments from Caribbean islands, including, most recently, the Cayman Islands.   XAVIER WILLIAMS, the defendant, has been identified as a leader of the DTO who organizes the removal of bags from international flights by employees of a particular airline ("Airline-1") who are members of the DTO.

7.     As a part of the investigation, at the direction of law enforcement, a confidential source ("CS-1")[1] has, among other things, engaged in narcotics-related communications with XAVIER WILLIAMS, the defendant. On or about June 4, 2015, CS-1 met in person with WILLIAMS and engaged in a discussion, which CS-1 recorded, regarding the smuggling of cocaine from Trinidad and Tobago to the Airport using corrupt Airline-1 employees. I have reviewed the recording of this meeting and discussed this meeting with CS-1. In the course of this meeting, XAVIER WILLIAMS, the defendant, stated, in sum and substance, that he is connected to one or more baggage handlers for Airline-1 who pull checked suitcases containing narcotics from international flights that arrive at the Airport.   WILLIAMS and CS-1 agreed that CS-1 would place five kilograms of cocaine in a checked bag on a flight from Trinidad and Tobago to the Airport (the "2015 Flight"), and that WILLIAMS would ensure that the narcotics were smuggled through Newark Airport and delivered to CS-1.

8.     On or about July 24, 2015, the day before the 2015 Flight was scheduled to arrive at the Airport, an HSI agent asked Airline-1 for its security schedule at the Airport for the day of the 2015 Flight.  Less than an hour after that request, XAVIER WILLIAMS, the defendant, contacted CS-1 and stated that he was pulling out of the planned smuggling operation because, in his words, it had been "red-flagged."

9.     As a part of the investigation, at the direction of law enforcement, a confidential source ("CS-2")[2] has, among other things, engaged in narcotics-related communications with XAVIER WILLIAMS, the defendant.  In the course of these communications, WILLIAMS has provided CS-2 with his cellphone number.   CS-2 and WILLIAMS have had at least two in-person

---

[1] CS-1 has been has been providing information to law enforcement since 2006 in exchange for financial compensation.   CS-1's information has proven reliable and has been corroborated in part by independent evidence, including surveillance and recordings of CS-1's meetings.

[2] CS-2 has been has been providing information to law enforcement since 2015 in exchange for financial compensation and in hope of receiving immigration benefits. CS-2 has a prior conviction for narcotics trafficking. CS-2's information has proven reliable and has been corroborated in part by independent evidence, including surveillance and recordings of CS-2's meetings and calls.

meetings and overs 25 calls, which CS-2 has recorded, regarding
the narcotics smuggling activities of the DTO, and specifically
regarding a plan for the defendants to smuggle narcotics through
the Airport for CS-2 in exchange for payments from CS-2.

       10.  On or about October 27, 2017, CS-2 had a meeting,
which CS-2 recorded, with XAVIER WILLIAMS, the defendant, at
WILLIAMS's residence in Hillside, New Jersey.  HSI agents
conducted visual surveillance of this meeting, and I have
reviewed the recording of this meeting and discussed this
meeting with CS-2.  In the course of this meeting, CS-2
discussed the possibility of smuggling cocaine into the United
States from Antigua through the Airport. At a certain point in
the meeting, WILLIAMS called another cellphone (the "Woolaston
Cellphone"), which was later identified on the basis of
cellphone subscriber information as belonging to TYRONE
WOOLASTON, the defendant. WILLIAMS stated to CS-2, in sum and
substance, that WOOLASTON is an employee of Airline-1 and that
WOOLASTON and WILLIAMS could arrange to have a checked suitcase
pulled off an international flight at the airport and placed in
the baggage claim for a domestic flight. I have reviewed a list
of security identification holders at the Airport and confirmed
that WOOLASTON was listed as being employed at the Airport by
Airline-1. After calling the WOOLASTON Cellphone, WILLIAMS then
drove with CS-2 to meet WOOLASTON in person at another location.
The parties then discussed a plan to smuggle five kilograms of
cocaine into the United States through the Airport, the price
per kilogram, and potential dates.

       11.  After the October 27, 2017 meeting, CS-2 and
XAVIER WILLIAMS, the defendant, had several calls in which they
discussed the logistics of smuggling cocaine into the United
States through the Airport. These calls were recorded by an
electronic system provided to CS-2 by HSI. WILLIAMS also
exchanged multiple messages using the "Whatsapp" application.

       12.  On or about January 6, 2018, CS-2 had a meeting,
which CS-2 recorded, with WILLIAMS, at the residence of XAVIER
WILLIAMS, the defendant, in Hillside, New Jersey.  HSI agents
conducted visual surveillance of this meeting, and I have
reviewed the recording of this meeting and discussed this
meeting with CS-2. In the course of this meeting, WILLIAMS and
CS-2 discussed a plan to smuggle five kilograms of cocaine on a
flight from either Antigua or the Dominican Republic into the
United States via the Airport. WILLIAMS placed a Facetime call
to the Woolaston Cellphone. On that call, WOOLASTON stated, in

4

sum and substance, that he was prepared to assist in removing
the checked bag containing the cocaine from the flight.

13.   At the January 6, 2018, meeting, the parties
agreed to a price of $45,000, or $9,000 per kilogram, with
$10,000 due on delivery and the rest payable afterward. HSI
agents had provided CS-2 with $10,000 in cash for this meeting,
and CS-2 provided WILLIAMS, with $4,000 as an initial payment,
and displayed the remaining $6,000 to be paid on delivery.
XAVIER WILLIAMS, the defendant, then explained that TYRONE
WOOLASTON, the defendant, would have the cocaine picked up at
the domestic baggage claim of the Airport and delivered to
WILLIAMS'S house, where WILLIAMS would deliver it to CS-2.   At
the conclusion of the meeting, WILLIAMS took CS-2 to the lower
level of his home and showed CS-2 several firearms he kept
there.

14.   After leaving the meeting, CS-2 went back to his
hotel room in Manhattan, New York. That evening, while in
Manhattan, CS-2 engaged in several recorded calls with XAVIER
WILLIAMS, the defendant, about the plan to smuggle narcotics
through the airport.

15.   Between January 6, 2018, and February 10, 2018,
CS-2 and XAVIER WILLIAMS, the defendant, engaged in a number of
additional calls and "Whatsapp" messages, and agreed that CS-2
would place five kilograms of cocaine on an international flight
from the Cayman Islands to the Airport on February 10, 2018, and
that WILLIAMS would arrange to smuggle the cocaine through the
Airport and deliver it to CS-2.

16.   On or about February 8, 2018, the Honorable Susan
D. Wigenton, United States District Judge, issued an Order of
Interception authorizing the interception of wire communications
over a cellphone used by XAVIER WILLIAMS, the defendant (the
"February 8 Order").

17.   On or about February 10, 2018, HSI agents, acting
pursuant to plans agreed to between CS-2 and XAVIER WILLIAMS,
the defendant, placed a suitcase containing, among other things,
five kilograms of fake cocaine on an international flight
scheduled to arrive at the Airport.   The flight landed at
approximately 6:30 p.m. on February 10, 2018.

18.   On or about February 10, 2018, at approximately
9:15 p.m., XAVIER WILLIAMS, the defendant, received a call from

5

TYRONE WOOLASTON, the defendant, which call was intercepted pursuant to the February 8 Order.  During the call, WOOLASTON stated, in sum and substance, that he was concerned about "the way this thing goes down."  WOOLASTON further stated that he was not afraid to show his gun. WILLIAMS stated that WILLIAMS has "his" on him as well, that he doesn't trust anyone, and that WOOLASTON should "walk with his thing on him as well."

19.   On or about February 11, 2018, CS-2 and XAVIER WILLIAMS, the defendant, agreed to meet at a hotel to exchange the drugs from the flight for the predetermined price.   I and other law enforcement officers surveilled that meeting and observed both WILLIAMS and TYRONE WOOLASTON, the defendant, arrive at the hotel in separate vehicles.

20.   Shortly thereafter, XAVIER WILLIAMS, the defendant, was apprehended by law enforcement while carrying a duffle bag containing several kilos of the fake cocaine that HSI agents had loaded onto the flight. During an inventory search of WILLIAMS' vehicle, HSI agents discovered a .40 caliber Taurus pistol. After TYRONE WOOLASTON, the defendant, was observed carrying a bag while walking towards the hotel from the parking lot, HSI agents approached WOOLASTON, who then dropped the bag and fled. HSI agents pursued WOOLASTON on foot and observed WOOLASTON dropping a firearm, which was subsequently recovered. Based on my conversations with other law enforcement officers, I have learned that the firearm was a .40 caliber Glock pistol. In addition, I have learned that the bag WOOLASTON dropped contained several additional kilos of the fake cocaine that HSI agents had loaded onto the flight.

21.   WHEREFORE, I respectfully ask that XAVIER WILLIAMS and TYRONE WOOLASTON, the defendants, be imprisoned or bailed, as the case may be.

CHRISTOPHER KALEY
Special Agent
Homeland Security Investigations

Sworn to before me this
13th day of February, 2018.

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7